Good morning, Your Honor. Stephen Lubliner for Petitioner and Appellant, Artists' Manual, Haggins. May it please the Court, I'm going to start by addressing the O'Sullivan default issue, which really only applies to Mr. Haggins' claim that he was entitled for, to an involuntary manslaughter instruction. We've articulated two rule-based reasons why the default should not be honored to bar review. They are somewhat contradictory, but not completely. And I hope I've made myself clear in the papers that the first position is grounded in the fact that the California Supreme Court does not review case-specific violations of clearly established constitutional rules. The Federal courts under AIPA can only grant relief for case-specific violations of clearly established constitutional rules. Therefore, it follows that in any case where a Petitioner might get relief in Federal court, the California Supreme Court is not going to take that case. Now, the fallback position is if the Court is uncomfortable with that hard and fast interpretation of Supreme Court policy, then exhaustion is still satisfied, because the California Supreme Court has the power to and does review every court of appeal opinion, has the power to grant review on its own merits of Federal constitutional issues and grant relief if it chooses, which I think is the ultimate fallback rule-based reason why the default doesn't apply. If the Court is uncomfortable with rule-based reasons and wants to try to figure out just what does the California Supreme Court do, given these arguably contradictory statements, Justice Breyer did the math in his dissent in O'Sullivan and said that if the Court in 1997, which is really kind of before AIPA really got going, only granted review in 1.9 percent of the criminal cases in front of it, I'm sure now with AIPA the number of potential habeas claims that the Court reviews, case-specific habeas claims, is probably zero. And I would like to suggest a possible alternative if the Court remains uncomfortable with what the California Supreme Court does, and that is to remand the case to the California Supreme Court for instruction to conduct an evidentiary hearing. In that line, I was at an appellate seminar a while back where there was a gentleman speaking who had worked for the State Supreme Court for some time, and one of the things that he said was that they had in processing the work, they had the A pile and they had the B pile and they had the C pile in descending order of attention So that is a possible alternative if the Court does not feel that the rules, as I have articulated them, do not establish a meaningful procedural default that this Court should honor. I did want to reserve two minutes of my time. I apologize for not noting that earlier. If the Court has no questions about that, I do want to address the Dixon point. Counsel? Yes, Your Honor. Counsel, before you go to the Dixon point, I was not clear from the record as to whether this individual had actually defaulted on the basis of time. It's quite confusing. He apparently tried to file his petition, gave it to the prison authorities before the deadline. Is that correct? He mailed it before the deadline, and they arguably received it from the before the deadline. I believe that the deadline was January 15th, where they would have lost jurisdiction. And I think he thought they received it from the before the deadline based on the clerk's letter to him, which was ultimately crossed out and a date of several months later was substituted. Now, I don't know if that was a typo, and they put the same date in the heading twice or not. But the California Supreme Court He would be entitled to the mailbox rule if, in fact, he gave it to the authorities before the deadline. Is that not correct? I believe that's correct, Your Honor. And the California Supreme Court, I think, took basically conceded that when the clerk invited him to file a habeas petition, invited him to file a habeas petition as a cure for the problem that had resulted. And that is why there really is no default respecting the intoxication claim that he had presented in his initial petition for review. Now, when he filed that habeas claim, he didn't set out the entire mailbox history and all the problems that had incurred. He just filed his habeas claim with the court, and he noted, well, A, I didn't file a petition for review, and B, the Court of Appeal has already heard this. So the California Supreme Court went fix in Walterius, and that was the end of that. So as far as timing goes, the only as the court did not really default him on timing based on the intoxication claim, and the magistrate also assumed that he had alleged cause for any state court default that had occurred. So we don't need to address that? I don't believe so. Okay. Turning to the Dixon issue, I think, as I've said, the issue really here is O'Sullivan and the Supreme Court's rule that if you do not invoke discretionary review where it's there to be invoked, you're defaulted. The Dixon issue is really irrelevant in this case. If Mr. Haggins had properly filed a petition for review and then gone to the State Supreme Court with a habeas petition for good measure, he still would have gotten a Dixon default, he still would have gotten a Walterius default. Should the Court disagree with that, I think it has to hold that the State did not adequately plead the adequacy of the Dixon default, which I say comes not just from the Court's language in Bennett, but also from some of the language in the room. Well, what language in Bennett says that the State has to plead? Well, it says they have to adequately plead the Dixon default, and then it has the discussion about how all this information is within the State's – within the State's possession. And so it's appropriate to put stronger burdens on the State. And this – Well, because once they make that, once they plead the procedural bar, then the burden shifts to you, right? Well, the question is how they – how do they go about pleading it? And additional authority that I've discovered since the briefing is by looking at the rules governing 2854 petitions, the advisory committee notes to Rule 4 and 5 both suggest that allegations should be made with particularity and that notice pleading is not really adequate in this context, and I submit that that applies not just to the Petitioner's allegations, but to the allegations that must be made in support of exhaustion and procedural default. Do you want to save the balance of your time? I just want to make one quick point about the additional citation that I filed, the Monterrez v. Alameda case, where there was a district court decision that the Petitioner had discharged his burden. He cited a California court of appeal case. He cited a table in which the courts reviewed claims notwithstanding the possibility of a Dixon default. The Attorney General did nothing in response, and so there was no default. I submit, while we don't have Ninth Circuit or U.S. Supreme Court authority on whether or not the Dixon default is adequate, that this kind of case should govern for a couple of reasons. We don't want piecemeal adjudications on this issue from court to court, from case to case. And if it is true what is said in Monterrez, that there are serious questions about the adequacy of the Dixon default, then the fact that the Attorney General nonetheless continues to cynically plead it against habeas Petitioners with limited resources calls into question not just the adequacy, but the sincerity of his pleading. And so that is another independent reason where if the Court believes that Dixon is relevant, it should rule that the default is not for review. And I'll reserve the rest of my time. Thank you. Roberts. Good morning. May it please the Court. Charles Ragland, Deputy Attorney General for Respondent, Warden Michael Yarbrough. Regarding O'Sullivan, in O'Sullivan, the United States Supreme Court clearly held that if you don't properly present your claims to the California Supreme Court or any state court, you have procedurally defaulted those claims. And that's what happened in this case. The petitioner failed to properly file a petition for review because he filed that petition late. And in terms of the California Supreme Court determination that it was late, the district court here properly held that the California Supreme Court ruled that it was untimely under state law, and it is not the province of a federal court to reexamine that question because that is a state law determination under, on a state law question. So we must accept the California Supreme Court's determination that it was a late petition for review. When you accept that, under O'Sullivan, he procedurally defaulted his claims because he failed to file that timely petition for review. And there's nothing in this case that would take it out of the purview of O'Sullivan. Interestingly, in O'Sullivan, the Supreme Court said that a state could, if it did not want to be bothered with these exhaustion petitions, per se, could declare in a decision that it did not want to deal with those and that petitioners could just directly bring their claims to federal court. The California Supreme Court, or excuse me, California, in their rules of court expressly take the opposite approach. They want these claims to come to the California Supreme Court, and you'll find that in the advisory committee comment to rule 33.3, which is the exhaustion petition rule. It says, although a petition under this rule must state that the case presents no grounds for review under rule 28B, this does not mean the Supreme Court cannot order review if it determines the case warrants it. When Pellant's counsel was referring to 33.1, was he actually referring to 33.3? Yes, if he was referring to the exhaustion petitions, it's 33.3. And he was right that that wasn't even in effect at the time that the petitioner was working his way through the state court. So the existence of that rule today shouldn't count as an excuse for him to get around the procedural rules existing at the time. But clearly, even if a state's high court has discretion to take certain and provide the State with the opportunity to exercise its discretion in grant review on the claims. When you go back to the adequate State ground, how did you in the district court you said that the Dixon rule is adequate in your brief, but how did you adequately plead the Dixon rule in that case? In the district court? Yes. Yes, I brought a motion to dismiss the petition. I cited the Dixon case, and I cited cases basically talking about the history of procedural rules in California. There was a time in California where California acknowledged that their application of these procedural rules had not been consistent, but I believe in 1993, going forward, they expressed they would apply. Do you need to have evidence of consistency regarding a Dixon default in the record? Not under circumstances like this case when the burden has not ultimately shifted back to us. In this court's decisions in High v. Ignacio and Forrest v. Vasquez, this court held that in the absence of any evidence that the rule is not consistently applied, it would be held adequate, and it was held adequate in both of those cases, and that's the situation we have here. The rule was pled as independent and adequate in the district court. In the petitioner's opposition, he was silent. He didn't counter that allegation with any sort of allegation that it wasn't consistently applied. The district court, based on that, ruled that the burden had not shifted back to the state, and therefore, we weren't in a position to put forth evidence that it had been consistently applied. So this case is no different than High v. Ignacio or Forrest v. Vasquez. There's one point I want to respond to, sort of getting back to the initial question about the timing of the petition for review. Petitioner's counsel mentioned that the court could have ordered review on its own It's important in this case, the time for the California Supreme Court to order review on its own motion had passed as well. A petitioner can bring a petition for review essentially 40 days after the decision is made. The California Supreme Court can order review on its own motion 60 days after the decision is made. In this case, the petition for review was filed beyond the 60 days. So that also wasn't an option in this case because of the delay that the petitioner took. And... So just why don't you briefly summarize under your view why we should affirm. Yes. Essentially, under O'Sullivan, if you fail to properly present your claims to the California Supreme Court, you have procedurally defaulted those claims. That's precisely what happened in this case because he failed to file a timely petition for review. And for that reason, this court should affirm. Well, what if we don't agree with you on procedural default? Then what's the next analysis? Well, the next analysis... Because we have what we've got the... We've both got the... It's the instruction. Well, we have the involuntary manslaughter and the voluntary intoxication. Yes, that's right. The Court of Appeal for the State of California addressed both of those claims on the merits, in their opinion, and rejected both of those claims. In the certificate of appealability that was issued by this court, you asked us to brief the merits of the second issue, the voluntary intoxication issue. There was not substantial evidence to warrant voluntary intoxication instructions in this case. And it was reasonable for the Court of Appeal to conclude that. And that's precisely what the district court... So what you're saying as to that instruction, if we don't find it procedurally barred, your position is that under the AEDPA standards, it wasn't an unreasonable application? Exactly. And although we haven't briefed the first issue, the involuntary manslaughter issue, that would be similar. It was a reasonable determination by the state court. If there are no other questions... There don't appear to be any further questions. Thank you for your argument. Thank you very much. Thank you, Your Honor. Going in somewhat reverse order, if there is, if the court agrees that there is no procedural default in this case, then it has to remand the case to the district court for the district court to consider the question of the involuntary manslaughter instruction on the merits. The district court considered the intoxication question as part of its cause and prejudice analysis, and I think that is why we were ordered to brief that issue as part of the certificate of appealability. The point we made about the court's ability to grant review on its own motion was not to rebut any argument that the petition had not been filed timely. It was to make the point that there is no exhaustion problem and there is no procedural default that this court needs to honor because the purposes of the exhaustion doctrine are satisfied. The California Supreme Court has the chance to pass on the claim of Federal error before it goes to Federal court. Counsel mentioned the advisory committee note to Rule 33.3, the streamlined petition for review. I think all of us who work on this side of the table recognize that the exhaustion procedural default, they're all kind of targeted at creating traps for the unwary. I submit that this rule was enacted for a reason, and it reflects prior practice, the practice that was in effect at the time that Mr. Haggins defaulted, and that's why I think there are questions of fact that arguably need to be answered in light of the clear limitations on Federal review and the suspect advisory committee note. Justice Souter and Justice Breyer in O'Sullivan said, well, just because a State occasionally employs a practice to grant review does not mean it has to be a hard and fast rule for purposes of exhaustion and procedural default. All right. Your time's expired. Thank you for your argument. This matter will now stand submitted. United States of America v. Josue Cruz Perez, case number 0550062.
judges: Goodwin, B. Fletcher, Callahan